**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| EFRAIN AREIZAGA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No. **4-22CV-703-Y** |
| v. | § | |
| | § | |
| TFORCE FREIGHT INC., UNITED | § | |
| PARCEL SERVICE, INC., and the | § | |
| INTERNATIONAL BROTHERHOOD OF | § | |
| TEAMSTERS, LOCAL 745 | § | |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, EFRAIN AREIZAGA, invokes this court's jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 29 U.S.C. § 106 and the "Doctrine of Continuing Violations," and files this complaint against the Defendants TForce Freight, Inc., (in its assumed or common name) formerly known as UPS Freight, United Parcel Service (UPS) and the International Brotherhood of Teamsters, Local 745 (IBT Local 745) an "Identity of Interest Party," to address the unlawful employment practice of discriminatory retaliation and other causes of action. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. Seq.* (Title VII), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and section 6 of the Norris La-Guardia Act, 29 U.S.C. § 106. The plaintiff will refer to all three defendants collectively as the "defendants" or individually as the facts requires. On occasions, the plaintiff will refer to United Parcel Services as "UPS" and use interchangeably UPS Freight & TForce Freight as the facts requires. This complaint seeks to provide appropriate relief to the

plaintiff for the harm and injuries caused by the defendants. The causes of action and summary of claims relating thereto are addressed below:

## I. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff EFRAIN AREIZAGA ("Plaintiff" or "Areizaga") is a citizen and resident of Tarrant County in the State of Texas, currently and in the approximate five-year period preceding the filing of this action residing at 4241 Rufe Snow Drive, Apt. 1423, North Richland Hills, TX 76180. The Plaintiff is a person within the meaning of the VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. At all times hereinafter mentioned, Plaintiff was a person who was engaged in commerce.

2.      UPS and TForce Freight are separate companies. Prior to April 30, 2021, they were affiliated by their common ownership by the same parent company, United Parcel Services, Inc., (UPS) a Delaware corporation with its local corporate office located at 636 E. Sandy Lake Rd., Coppell, TX 75019. As of April 30. 2021, TForce Freight (formerly known as UPS Freight, Inc.) is owned by a TFI International a Canadian Company, with its main corporate office located 55 Glenlake Parkway NE, Atlanta GA 30328. UPS and TForce Freight engage in foreign and interstate commerce by shipping and receiving freight and parcels across the United States. UPS and TForce Freight are each corporations authorized to do business in the state of Texas with more than 15 continuous employees each. TForce Freight & UPS owns or leases at least 87 facilities across the state of Texas.

At all times hereinafter mentioned, UPS and TForce Freight are employers who engaged in foreign and interstate commerce within the meaning of the VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

3. The International Brotherhood of Teamsters, Local 745 ("Teamsters Union" or "IBT Local 745") is a labor union that represents and intercedes on behalf of union members regarding member benefits, grievances, grievance procedures, arbitration hearing and settlements with employers among other things. The IBT Local 745 is a labor Union authorized to conduct business in the state of Texas. At all times the Teamsters union has a duty to protect their members rights fairly, in good faith and without discrimination pursuant to the National Labor Relations Act (NLRA) 29 U.S.C § 141(b) & article 28 of the CBA. At all times hereinafter mentioned, the IBT local 745 is a labor organization engaged in an industry affecting foreign and interstate commerce within the meaning of the VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e and section 6 of the Norris La-Guardia Act, 29 U.S.C. § 106. IBT Local 745 conducts its business locally at their principal business office located at 1007 Jonelle Street, Dallas, TX 75217.

4. This Court has jurisdiction over the claim filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. Seq. (Title VII), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and section 6 of the Norris La-Guardia Act, 29 U.S.C. § 106. In addition, Plaintiff's damages are within the Court's jurisdictional limits.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1331, 1391 and section 6 of the Norris La-Guardia Act, 29 U.S.C. § 106, additionally this court has jurisdiction over plaintiff's common law causes of action under 28 U.S.C § 1367 as they are so related to claims in the action within the Court's original jurisdiction that they form a part of the same case or controversy. Therefore, because the dispute presents a federal question and the court has original and/or supplement jurisdiction over all of plaintiff's claims, this court has subject matter jurisdiction over the entire action.

## II.    CONDITIONS PRECEDENT

6.    At all times hereinafter mentioned, the National Master UPS Freight (TForce Freight) Agreement (CBA) for the period August 1, 2013, through July 31, 2018, is a binding contract between the defendants. This Master agreement is also known as the collective bargaining agreement (CBA). It provides the rules and procedures for employee grievances, suspensions, and terminations.

7.    At all times hereinafter mentioned, the plaintiff was a part-time employee working as a dock clerk from 5:00 pm to 12:00 am with UPS Freight (TForce Freight) terminal located at 5001 Davis Strickland Road, Ft. Worth, TX 76119 until his termination on August 22, 2017.

8.    At all times hereinafter mentioned, the plaintiff was an active member of the International Brotherhood of Teamsters Union membership # 0745024221, via the local affiliated union # 745 located 1007 Jonelle Street, Dallas TX 75217.

9.    At all times hereinafter mentioned, UPS & TForce freight are nonexempt government contractor (contractor) subject to Executive Order 11246 (EO 11246) as amended and Title VII § 4212 or the Vietnam Era Veteran's Readjustment Assistance Act of 1974 (VEVRAA) as amended and the Federal Acquisition Regulation (FAR) clause 52.203-13 as amended.

10.    At all times hereinafter mentioned, the plaintiff was a protected veteran covered by EO 11246 and Title VII § 4212 or VEVRAA.

11.    At all material times, the defendants have acted, directly or indirectly, in the interest of itself with respect to plaintiff.

12. At all times hereinafter mentioned, TForce Freight and UPS have been employers engaged in foreign and interstate commerce within the meaning of the VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

13. At all times hereinafter mentioned, Teamster local 745 union has been a labor organization engaged in an industry affecting commerce within the meaning of the VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

14. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce within the meaning of the VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

15. At all times hereinafter mentioned, a grievance is hereby defined to be any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of the collective bargaining agreement pursuant to the National Master UPS Freight (TForce Freight) Agreement (CBA) for the period August 1, 2013, through July 31, 2018 (section 7.1 of the CBA).

16. At all times hereinafter mentioned, the CBA is excluded from the Federal Arbitration Act pursuant to 9 U.S.C. § 1.

17. At all times hereinafter mentioned, the defendants were aware that the Plaintiff was terminated without pay by JEFF CHEYNE, on August 22, 2017.

18. All conditions precedents have been performed or have occurred within the jurisdiction of United States District Court for the Northern District of Texas.

## III.    FACTUAL ALLEGATIONS

19.    The plaintiff, EFRAIN AREIZAGA, was hired by JEFF CHEYNE, UPS Freight (TForce Freight) terminal service manager as a part-time dock clerk in the evenings from 5:00 pm to 12:00 am prior to his termination by JEFF CHEYNE on August 22, 2017.

20.    The plaintiff became a member of the Teamsters Union (IBT) local #745 after his probationary period as a dock clerk with UPS Freight.

21.    For the first 3 months of plaintiff's employment, the plaintiff, was prohibited from taking his mandatory lunches and breaks by the previous shift dock supervisor and the current shift dock supervisor, CLINT SHIRLEY. A few weeks before plaintiff's termination, plaintiff was verbally reprimanded, for not taking his mandatory lunches and breaks required during his 7 hour per evening shift, in a meeting with JEFF CHENEY, service center manager, RONALD GODBEY, regional director of operations, NICK HANDCOX, clerk and union steward and KENNETH CORNWELL, UPS Freight driver and chief steward for Teamster union, and another unknow union stewards and/or UPS Freight employees. As a result, plaintiff's hours were reduced to 6 hours per evening shift and plaintiff's ½ hour lunch was terminated without notice.

22.    Approximately every 6 months, senior UPS Freight employees apply and/or bid for their preferred positions and less senior employees would have to move from their current position to a vacant position. After the plaintiff's evening position was bid by another senior clerk, the plaintiff was looking at a couple of weeks of work in the evening shift before he would be forced to move to a morning shift. During this transitional period, JEFF CHEYNE the service center manager, offered the plaintiff a second evening position pending the approval by human resources.

23.    On August 21, 2017, the plaintiff filed a grievance against CLINT SHIRLEY, the current dock supervisor, who was harassing JENNIFER BLANKENSHIP, a dock worker, because of her sex and physical limitations as personally witnessed by the plaintiff.

24.    On August 22, 2017, the plaintiff came into work for his evening shift at the UPS Freight (TForce Freight) terminal, when the plaintiff received a phone call from JEFF CHENEY, the service center manager, who terminated the plaintiff without any notice or reason. JEFF CHENEY stated to the plaintiff, over the phone, that a new employee was taking plaintiff's position and will start work tomorrow on the day shift and that a senior clerk with take over the evening shift. He continued to state that human resources did not approve the second evening shift and that tonight was plaintiff's last day of work. JEFF CHENEY then asked the plaintiff to hand the phone over to KENNETH CORNWELL, UPS Freight driver and chief steward for Teamsters union. A few minutes later KENNETH CORNWELL and ANTHONY BROWN (daytime shift dock supervisor) confiscated plaintiff's employee badge and escorted plaintiff off the property.

25.    Later that evening on August 22, 2017, the plaintiff returned to UPS Freight terminal and turned in his second grievance to the on-duty steward, KENNETH CORNWELL, for wrongful termination without notice (article 6) and for retaliatory discrimination (article 28) pursuant to the National Master UPS Freight Agreement (CBA).

26.    Sometime after the plaintiff's termination, the plaintiff spoke with Teamsters local 745, ROD CUEVAS, Trustee and Assistant business representative, and he stated to the plaintiff that he wasn't really terminated, because he wasn't given notice.

27.     On October 16, 2017, the plaintiff received a USPS certified letter (#7016 2710 0000 1649 9199) dated October 10, 2017, from JEFF CHEYNE, the service center manager and it stated as follows (letter incorporated by reference as the first document attached hereto):

> "You have been absent without authorization since 8/22/17. You need to report to work by 10/19/17 for the 0930-1600 shift. If you do not report to work by 10/19/17 for the 0930-1600 shift, the Company will consider you as having voluntarily quit your position at UPS Freight."

On the bottom left of the letter copies were sent to RONALD GODBEY, regional director of operations, JEFF CHEYNE, service center manager, ROBERT CURRIE UPS Freight Labor Manager, IBT local 745 and the plaintiff.

28.     On October 19, 2017, the plaintiff called NICK HANDCOX, the day-time UPS clerk and union steward, and stated to him that he was on his way to work the day-time shift. NICK HANDCOX, stated to the plaintiff not to come into the office because someone else was working plaintiff's shift and that there was no position for plaintiff at the UPS Freight (TForce Freight) Ft. Worth terminal. The plaintiff showed up anyway at the UPS Freight (TForce Freight) terminal and handed NICK HANDCOX, (clerk and union steward) a third grievance for the false narrative of job abandonment. NICK HANDCOX became verbally aggressive towards the plaintiff, as well as the UPS Freight (TForce Freight) assistant service center manager. The plaintiff left the facility to avoid any physical altercations.

29.     Plaintiff's third grievance, dated October 18, 2017, mentioned in the paragraph #28 above, puts the defendants on notice of the False Accountability Act 1996 – 18 U.S.C § 1001, where the defendant's continued use of this false narrative of Plaintiff's job abandonment in future administrative proceedings would be in violation of said act and trigger the mandatory disclosures requirements as implemented in FAR 52.203-13(b).

30.    Sometime on or after October 25, 2017, the plaintiff obtained a copy of plaintiff's termination letter from ROD CUEVAS, IBT local 745 trustee and business representative. The termination letter was marked as received by IBT local 745 on October 25, 2017 and marked as exhibit #4 as evidence in plaintiff's grievance complaint (letter incorporated by reference as the second document attached hereto). Plaintiff's termination letter dated October 23, 2017, from JEFF CHEYNE, service center manager, who again fired the plaintiff a non-employee at the time, for showing up to a non-existing dock clerk position on October 19, 2017, located at the UPS Freight (TForce Freight) terminal in Ft. Worth. The letter stated as follows:

> "On October 10, 2017 you were sent a 48 hour letter to report to work, but you have failed to do so. Due to your job abandonment your employment is terminated. This is an official notice of termination as outlined under article 6 of the current labor agreement between UPS Freight and IBT local 745."

On the bottom left of the letter copies were sent to RONALD GODBEY, regional director of operations, JEFF CHEYNE, service center manager, ROBERT CURRIE, UPS Freight labor manager, IBT local 745 and the plaintiff.

31.    When plaintiff obtained his copy of plaintiff's termination letter as stated in item #30 above at the IBT local 745 union's main office, plaintiff spoke to ROD CUEVAS, IBT local 745 union Trustee and business representative and BRENT TAYLOR, Secretary treasurer and business manager, about plaintiff's termination letter. BRENT TAYLOR insisted that plaintiff wasn't terminated on August 22, 2017, because UPS Freight did not provide a notice of termination and that plaintiff's termination letter on October 23, 2017 was the notice required to proceed with plaintiff's grievance. BRENT TAYLOR and ROD CUEVAS advised the plaintiff that plaintiff's claims of retaliation will not be decided by the grievance panel and that the plaintiff was required to fill out a 4th grievance cover sheet as to include the notice of termination on October 23, 2017, so that IBT local 745 can pursue plaintiff's claim concerning contractual

disputes issues only, before the grievance panel on November 16, 2017. Due to the implied threat by BRENT TAYLOR, Plaintiff had no other choice but to fill out the 4th grievance cover sheet as directed by ROD CUEVAS and BRENT TAYLOR, so that the union can pursue Plaintiff's grievance (pursuant to article 7.1. - Where the grievance procedure can be invoked only by union or employer representatives).

32.     BRENT TAYLOR and ROD CUEVAS are non-lawyers and are not authorized to practice law in the state of Texas.

33.     During the CBA grievance process, the plaintiff spoke to ROD CUEVAS, IBT local 745 union Trustee and business representative who stated to the plaintiff that the grievance hearing was set for November 16, 2017, in Tampa, Florida which made it impossible for the plaintiff to attend the grievance hearing. ROD CUEVAS stated to the plaintiff not to worry that the union would take care of it.

34.     On October 27, 2017, the plaintiff emailed ROD CUEVAS, IBT local union trustee and business representative, and instructed ROD CUEVAS to argue issues for wrongful termination in the pre-grievance hearing as follows (email incorporated by reference as the 3rd document attached hereto):

> "1) I was instructed that Aug. 22 was my last day by manager.
> 2) I was escorted off the property and my badge was confiscated.
> 3) I wasn't working for two months.
> 4) another employee was hired for my position.
>
> Based in the facts above and since there was no notice of termination. This constitutes a *de facto* termination. A termination without notice which is a wrongful termination and a contractual violation."

35.     On October 30, the plaintiff attended a pre-grievance hearing with his IBT local 745 union Trustee and business representative ROD CUEVAS at the UPS Freight terminal located in Ft. Worth, Texas. Present in the meeting was JEFF CHEYNE, service center manager,

JASON FOLMER, union city steward, NICK HANDCOX, union clerk steward, ROBERT CURRIE, UPS Freight labor manager. No agreement was reached, but the following admissions were made during the pre-grievance hearing:

> JEFF CHEYNE admitted that no notice was provided at the time of termination on 8/22/17 where the plaintiff was relieved of his duties. In addition, JEFF CHEYNE admitted talking to the plaintiff about the new evening clerk position but denied offering the plaintiff the position.

> ROBERT CURRIE admitted that the plaintiff was improperly discharged.

36. Plaintiff's grievance was heard on November 16, 2017, by the Southern Region Teamster UPS Freight Grievance committee before S.R.T.U.P.S.F.G.C committee hearing in Tampa, Florida. The grievance panel committee to hear a case, shall contain an equal number of employer committee members and union committee members not to exceed 3 union committee members and 3 employer committee members (CBA section 5(c)). ROBERT CURRIE, UPS Freight labor manager, and KRIS TAYLOR, IBT local 745 assistant business representative were present at the hearing. The committee hearing for plaintiff's grievance case #17-11-001F decision "was based on the presented claim of the union was denied."

37. ROBERT CURRIE, KRIS TAYLOR and all the panel committee members are non-lawyers and are not authorized to practice law in the state of Florida.

38. As a result of the grievance committee's decision to deny the plaintiff's grievance claim presented by KRIS TAYLOR, IBT local 745 assistant business representative, on behalf of IBT local 745 union, and ROBERT CURRIE, UPS Freight labor manager for UPS, the plaintiff was injured by loss of pay for 3 months, from 8/22/17 to 11/16/17, in the amount of $3,685.71 (per article 7.2) and the customary x3 for the contractual violation which equaled to $11,057.14 for a grand total of $14,742.85.

39.    BRENT TAYLOR, IBT local 745 Secretary treasurer and business manager and KRIS TAYLOR, IBT local 745 assistant business representative, are brother. In September of 2017, KRIS TAYLOR was appointed by JAMES P. HOFFA to negotiate the UPS Freight contract (CBA).

40.    The International Brotherhood of Teamsters (IBT) has a history of corruption and involvement with organized crime which led to the President's Commission on Organized Crime a consent decree under the RICO act which was in effect in 2017. Moreover, BRENT TAYLOR, IBT local 745 Secretary treasurer and business manager was sanctioned $1,500.00 on January 13, 2013, by the Texas Ethics Commission for his failure to report campaign finance and political expenditures.

41.    On June 4, 2018, the plaintiff filed a discrimination complaint with the U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP) complaint # 100207766 for allegations of discrimination based on veteran status and for retaliation.

42.    On or about February 6, 2019, TForce Freight responded to plaintiff's complaint of discrimination via their attorneys Amber M. Rogers, Jayde Ashford Brown from the law firm Of Hunton Andrews Kurth LLP located at 1445 Ross Avenue, Suite 3700, Dallas, TX 75202.

Hector M. Melendez Jr., J.D., compliance officer for the OFCCP reviewed UPS Freight's response and made the following statement in an email to plaintiff (email incorporated as the fourth document attached hereto):

> "In summary, USPF's main argument is they terminated your employment for job abandonment. They did not mention or acknowledge any termination on 8/22/17, as you allege. However, they do claim, as you do, that 8/22/17 was your last day of work. What I find hard to believe is their position that despite knowing there was no available position for you (they had hired someone for the AM shift and the PM shift senior employee/clerk was taking over the position you had held), they somehow expected you to show up for work after 8/22/17. Moreover, I find it hard to believe, for 49 days, they did not contact or notify you at all; they

waited 49 days to send you a 48-hour notice to return to work. Had they immediately terminated you for either insubordination (for argument with Clint Shirley) or for not being able to take the AM shift after being displaced, this case would be very different. UPSF's actions/delays seem very peculiar to me. In any case, I intend to get to the bottom of this."

43.     On May 21, 2019, the U.S. Department of Labor OFCCP sent out a Notification of results of investigation, notification of no violations and transfer to EEOC for further investigation. Item #5 of the findings states as follows:

> "Based on the findings of this investigation, there was insufficient evidence that the contractor violated its obligations under the nondiscrimination and affirmative action provisions of the VEVRAA. However, OFCCP finds that the complainant may have a *prima facie* case to support his claim that the contractor wrongfully terminated his employment in retaliation for filing a grievance and the contractor's defense is pretextual."

44.     As a result of TForce Freight's failure to disclose the truth about plaintiff's termination, the plaintiff continued to suffer injuries and damages where the plaintiff was denied his right to recover back pay from 11/16/17 to 5/21/19 in the amount of $23,614.29 for plaintiff's wrongful and unlawful termination on 8/22/17.

45.     On May 31, 2019, the U.S. Department of Labor OFCCP transfer the case over to EEOC pursuant to a Memorandum of Understanding (MOU) which was developed between EEOC and OFCCP which EEOC assumes jurisdiction over individual complaints which include allegations of discrimination of an individual nature of the basis of race, color, religion, sex, national origin, or age (41 CFR60-742.5(d)).

46.     On March 24, 2021, UPS & TForce Freight finally responded to plaintiff's EEOC complaint case no. 450-2019004874 via their attorney Michael B. Guilliam with the law firm of BurnsBarton PLC, located at 2201 E. Camelback Road, suite 360, Phoenix, AX=Z 85016. UPS & TForce Freight responds as follows (letter page 1 paragraph 1, incorporated by reference as document five attached hereto):

"... UPS terminated Areizaga's employment as a result of his express inability to transfer to an open morning shift position after he was displaced from an evening shift position by an employee with higher seniority."

47.     On 5/17/2022, the EEOC issued a determination and notice of rights and made no findings regarding whether the investigation would establish any violation of the statue, providing the plaintiff a notice of his right to sue and file a law within 90 days of receipt of the notice. Plaintiff view and/or received this notice on or after 5/25/2022.

48.     As a result of UPS's failure to cooperate, mediate and failure to disclose the truth regarding plaintiff's termination during the EEOC investigation, the plaintiff continued to suffer injuries and damages where the plaintiff was denied his right to recover back pay from 11/16/17 to 5/17/2022 in the amount of $70,414.29 for plaintiff's wrongful and unlawful termination on 8/22/17.

49.     The defendant's intentional, harassing and unlawful conduct for the last five years, as stated herein, have injured the plaintiff, causing fear, anxiety, isolation insomnia, weight gain and exacerbated plaintiff's high blood pressure. As a result of plaintiff's weight gain, plaintiff was diagnosed with diabetes and an umbilical hernia in March of 2021. Plaintiff will have to be on a strict diet for the rest of his life to keep his sugar blood levels low. Moreover, on April 21, 2021, the plaintiff had surgery to repair the umbilical hernia, leaving the plaintiff with a disfiguring scar below his belly button.

50.     On January 25, 2021, UPS announced it had reached an agreement to sell UPS Freight to TFI International for $800 million, which was $400 million less than what UPS had purchased the Overnite Transportation (LTL) and rebranded as UPS Freight in 2005. As part of the agreement UPS will provide TForce Freight with freight volume, UPS Ground with Freight pricing solutions, UPS technology platforms for rating, shipping and visibility for the next 5

years. UPS will be responsible for historical pension assets and **liabilities**, while TFI will manage worker pension benefits after the deal closes. The deal closed on April 30, 2021. Moreover, prior to the sale of UPS Freight, UPS never separated UPS Freight from its supply chain and freight business unit, which includes freight forwarding, customs brokerage, financial services and freight brokerage operations. The latter of which came from its $1.8 billion acquisition of Coyote Logistics in 2015.

51.    UPS has a long history of intentional unlaw conduct as shown in the legal actions described below (plaintiff list only a few):

a)    On March 29, 2013, UPS and the U.S. Attorney's office entered into a non-prosecution agreement to forfeit $40 million in payments it has received from illicit online pharmacies and to implement a compliance program designed to ensure that illegal online pharmacies will not be able to use UPS's services to distribute drugs.

b)    On March 21, 2022, UPS and the U.S. Attorney's office entered into an agreement to pay $5.3 million to settle a false claims act allegation for falsely reporting delivery time of U.S. mail carried internationally.

c)    In 2019, UPS and the U.S. Attorney's office entered into an agreement to pay $8.4 million to settle a claim of overcharging the General Services Administration from 2007 to 2014.

d)    On May 19, 2015, UPS and the U.S. Attorney's office entered into an agreement to settle complaints that UPS kept false records to hid late deliveries and collect more for overnight packages to government customers. UPS agreed to pay $25 million to the Justice Department and $740,00.00 to the state of New Jersey. In addition, $3.75 million to a former UPS employee whistleblower.

e)    On December 13, 2021, UPS pays $1 million to settle wage theft allegations over charitable deductions.

f)    On June 16, 2021, UPS & TForce Freight agreed to pay the EPA $3.8 million to correct alleged violations of hazardous waste in facilities in Arkansas, Louisiana, Oklahoma, New Mexico and Texas.

## IV.    CAUSES OF ACTION

### A. DISCRIMINATORY RETALIATION

52.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

### COUNT I (RETALIATION)

53.    On August 22, 2017, the plaintiff was terminated, in violation of Title VII, 42 U.S.C. §2000e for opposing a discrimination practice, by UPS & TForce Freight, for filing a discrimination complaint against dock supervisor CLINT SHIRLEY on August 21, 20017, where the UPS & TForce Freight defense of "job abandonment" was pretextual. The effect of this event has been to deprive the plaintiff equal employment opportunities in retaliation for exercising his federally protected rights.

### COUNT II (RETALIATION)

54.    On November 16, 2017, the plaintiff was denied relief for filing and participation in a grievance hearing, in violation Title VII, 42 U.S.C. §2000e for opposing a discrimination practice, by the defendants, for filing a discrimination complaint against dock supervisor CLINT SHIRLEY on August 21, 20017 and participating in a DBA grievance hearing, where the defendant's defense of "job abandonment" was not only pretextual but false and fraudulent. The effect of this event has been to deprive the plaintiff equal employment opportunities in retaliation for exercising his federally protected rights.

### COUNT III (RETALIATION)

55.    On or about February 6, 2019, the plaintiff was denied relief for filing and participation in the investigation for discrimination before the Labor Department OFCCP, in violation Title VII, 42 U.S.C. §2000e for opposing a discrimination practice, by the defendants,

for filing a discrimination complaint #100207766 against the defendants and participating in a federal discriminatory investigation by OFCCP, where the defendant's defense of "job abandonment" was not only pretextual but false, fraudulent with the intent to conceal the truth. The effect of this event has been to deprive the plaintiff equal employment opportunities in retaliation for exercising his federally protected rights.

## *COUNT IV (RETALIATION)*

56.     On March 24, 2021, the plaintiff was denied relief for filing and participation in the investigation for discrimination before the EEOC, in violation Title VII, 42 U.S.C. §2000e for opposing a discrimination practice, by the defendants, for filing a discrimination complaint # 450-2019-04874 against the defendants for participating in a federal discriminatory investigation by EEOC, where the defendant's response of ""… UPS terminated Areizaga's employment as a result of his express inability to transfer to an open morning shift position after he was displaced from an evening shift position by an employee with higher seniority," was not only pretextual but false, fraudulent with the intent to conceal the truth. The effect of this event has been to deprive the plaintiff equal employment opportunities in retaliation for exercising his federally protected rights.

57.     The unlawful employment practices described above were, willful, intentional and were done with malice to the federally protected rights of the plaintiff.

## B. CONVERGENCE

58.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

59.     As a result of plaintiff's denial of his grievance case #17-11-001F, on November 16, 2017, by the Southern Region Teamster UPS Freight Grievance committee before

S.R.T.U.P.S.F.G.C committee hearing in Tampa, Florida, where the defendants colluded to terminate the plaintiff via ROBERT CURRIE, UPS Freight labor manager, and KRIS TAYLOR, IBT local 745 assistant business representative, were they present the false narrative of "job abandonment" at the hearing with the specific intent to terminate the plaintiff and denied his back pay from 8/22/17 to 11/16/17, in the amount of $3,685.71 and the customary x3 for the contractual violation which equaled to $11,057.14 for a grand total of $14,742.85.

60.    The plaintiff had the right to the immediate possession of his back pay and the customary x3 for contractual on November 16, 2017, for his wrongful contractual termination without cause pursuant to CBA. Where section 6.1 states that employees will not be discharged except for just cause, where the plaintiff was terminated on August 22, 2017, without notice or cause. CBA section 7.2 states that "except in cases where an employee can be suspended or discharged without a warning letter, an employee subject to suspension or discharge shall be allowed to remain on the job, without loss of pay, unless and until the suspension or discharge is sustained under the grievance procedure.

61.    As a result of the defendant's wrongful exercised of dominion and control over plaintiff monetary property rights, the plaintiff was injured by loss of pay for 3 months, from 8/22/17 to 11/16/17, in the amount of $3,685.71 (per article 7.2) and the customary x3 for the contractual violation which equaled to $11,057.14 for a grand total of $14,742.85.

62.    The unlawful conduct by the defendant's described above were willful, intentional, was done with malice to plaintiff state and federal protected rights.

## C. FRAUD & MALICIOUS CONDUCT

63.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

64.     Plaintiff's injury resulted from defendant's actual fraud or malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code section 41.003(a), 41.005 and 41.008(c) in the alternative 41.008(b).

### COUNT I (ACTUAL FRAUD)

65.     IBT local 745 has a duty to protect their members rights fairly, in good faith and without discrimination pursuant to the National Labor Relations Act (NLRA) 29 U.S.C § 141(b) & article 28 of the CBA.

66. ROD CUEVAS, IBT local 745 union Trustee and business representative and BRENT TAYLOR, Secretary treasurer and business manager insisted that plaintiff wasn't terminated on August 22, 2017, because TForce Freight did not provide a notice of termination. They both falsely stated that plaintiff's termination letter on October 23, 2017, which contained the false job abandonment narrative, was the notice required to proceed with plaintiff's grievance.

67.     BRENT TAYLOR and ROD CUEVAS falsely advised the plaintiff that plaintiff was required to fill out a 4th grievance cover sheet as to include the notice of termination on October 23, 2017, so that IBT local 745 can pursue plaintiff's claim concerning contractual disputes issues only, before the grievance panel on November 16, 2017. Plaintiff relied on their advise, because only the union and the employer can invoke the grievance procedure pursuant to CBA 7.1, as BRENT TAYLOR reminded plaintiff.

68.     BRENT TAYLOR and ROD CUEVAS were aware at all times that plaintiff second termination was not within the scope of the CBA, because the plaintiff was not an employee at the time, and that the cause of termination of job abandonment by TForce Freight in a termination letter on October 23, 2017 was false.

69.     As a result of the defendants, willful, intentional introduction of plaintiff's second termination of employee for job abandonment, on November 16, 2017, to a non-existing position which was not within the scope of the CBA, to the Southern Region Teamster UPS Freight Grievance committee a third party via ROBERT CURRIE, UPS Freight labor manager, and KRIS TAYLOR, IBT local 745 assistant business representative. The plaintiff was injured and was denied his back pay from 8/22/17 to 11/16/17, in the amount of $3,685.71 and the customary x3 for the contractual violation which equaled to $11,057.14 for a grand total of $14,742.85.

70.     The unlawful conduct by the defendant's described above were willful, intentional, was done with malice to plaintiff state and federal protected rights.

### COUNT I (MALICIOUS CONDUCT)

71.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 63 through 70 as if fully stated herein.

72.     Defendant's conduct as stated above violates Texas Penal Code § 32.46, securing execution of a document by deception, where the IBT local 745 deceived the plaintiff into signing a grievance to include a false narrative of job abandonment into plaintiff's grievance hearing without plaintiff's effective consent with intent to defraud and harm the plaintiff of his monetary rights of $14,742.85.

### COUNT II (MALICIOUS CONDUCT)

73.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 63 through 72 as if fully stated herein.

74.     The defendant's conduct above violates the False Statement Accountability Act of 1996 (FSAA), 18 U.S.C. §1001 where the defendants falsified, concealed, and covers up by scheme a material fact, and made material false representations and used of a false writing to

influence the decision of the CBA grievance panel on November 16, 2017, thereby defrauding the plaintiff from his plaintiff of his monetary rights of $14,742.85.

### COUNT III (MALICIOUS CONDUCT)

75.    On or about February 6, 2019, the plaintiff was denied relief before the Labor Department OFCCP, in violation Texas Penal Code §32.47 – fraudulent concealment of writing - in an investigation by OFCCP, where the defendant's response of "job abandonment" was fraudulent with the intent to conceal the truth and defraud the plaintiff of his monetary rights.

### COUNT IV (MALICIOUS CONDUCT)

76.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 63 through 75 as if fully stated herein.

77.    The defendant's conduct above violates the False Statement Accountability Act of 1996 (FSAA), 18 U.S.C. §1001 where the defendants falsified, concealed, and covers up by scheme a material fact, and made material false representations and used of a false writing to influence the decision of the Department of Labor OFCCP on February 6, 2019, thereby defrauding the plaintiff from his plaintiff of his monetary rights.

### COUNT V (MALICIOUS CONDUCT)

78.    On March 24, 2021, the plaintiff was denied relief before the EEOC, in violation Texas Penal Code §32.47 – fraudulent concealment of writing - in an investigation by the EEOC, where the defendant's response of """"… UPS terminated Areizaga's employment as a result of his express inability to transfer to an open morning shift position after he was displaced from an evening shift position by an employee with higher seniority" was false with the intent to conceal the truth and defraud the plaintiff of his monetary rights.

## COUNT VI (MALICIOUS CONDUCT)

79.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 63 through 78 as if fully stated herein.

80.    The defendant's conduct above violates the False Statement Accountability Act of 1996 (FSAA), 18 U.S.C. §1001 where the defendants falsified, concealed, and covers up by scheme a material fact, and made material false representations and used of a false writing to influence the decision of the EEOC on March 24, 2021, thereby defrauding the plaintiff from his plaintiff of his monetary rights.

## D.  CIVIL CONSPIRACY

81.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

82.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 64 through 80 as if fully stated herein.

83.    The defendants are all organizations each with two or more individuals that colluded to injure the plaintiff with a common unlawful purpose using unlawful means as described herein.

84.    The plaintiff suffered injury as a proximate result of the wrongful acts.

## E. MENTAL ANGUISH

85.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

86.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 64 through 80 as if fully stated herein.

87.    The defendant's intentional, harassing and unlawful conduct for the last five years, as stated herein, have injured the plaintiff, causing fear, anxiety, isolation insomnia, weight gain and exacerbated plaintiff's high blood pressure. As a result of plaintiff's weight gain, plaintiff was diagnosed with diabetes and an umbilical hernia in March of 2021. Plaintiff will have to be on a strict diet for the rest of his life to keep his sugar blood levels low. Moreover, on April 21, 2021, the plaintiff had surgery to repair the umbilical hernia, leaving the plaintiff with a disfiguring scar below his belly button.

### F. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

89.    Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 64 through 87 as if fully stated herein.

### VI.    ATTORNEY FEES AND COST

90.    Plaintiff requests attorney fees.

### VII.    JURY DEMAND

91.    Plaintiff requests trial by jury.

## VIII. PRAYER

92.    WHEREFORE, Plaintiff prays for judgment against the defendants as follows:

    a.    For a judgment finding that the defendants engaged in retaliation against the plaintiff in violation of Title VII, 42 U.S.C. §2000e for opposing a discrimination practice where the defendant's defense of job abandonment was pretextual.

    b.    For a judgment awarding the Plaintiff, convergence damages, back pay and approximate actual damages in the total amount of $85,157.14;

    c.    For a judgment awarding the plaintiff for past and future non-pecuniary losses, including metal anguish and intentional infliction of emotional distress in the amount of $260,000.00, for a total of $345,157.14 in compensatory damages.

    d.    For a judgment awarding the plaintiff for his past and future pecuniary losses to include medical cost;

    e.    For a judgment awarding uncapped exemplary/punitive damages for defendant's malicious conduct in the amount of $2,416,100.00 (=x7 for fraud and malicious conduct) compensatory damages for each of the defendants in this action, in the alternate capped exemplary damages pursuant to Texas law;

    f.    For a judgment awarding Plaintiff the costs of this action;

    g.    For a judgment awarding Plaintiff reasonable attorney's fees and for future attorney fees;

    h.    For a judgment awarding Plaintiff expert witness fees;

i.   Fore a judgment awarding Plaintiff 8.5% inflation on the compensatory damages;

j.   For a judgment awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

k.   For a judgment granting such other and further relief as the Court may be deem necessary and appropriate.

Dated; August 15, 2022.

Respectfully submitted,
Efrain Areizaga, *Pro Se*

By: _____

**Efrain Areizaga, *Pro Se***
4241 Rufe Snow Drive, Apt. 1423
North Richland Hills, TX 76180
Telephone: (469) 297-0216
efrainareizaga@gmail.com

UPS Freight

Southeast Region
2600 East Pioneer Drive
Irving, TX 75061

Efrain Areizaga
4241 Rufe Snow Drive Apt 1423
North Richland Hills, TX 76180

ID# 5069679
October 10, 2017

IN RE:    Unauthorized Leave of Absence
          Clerk– FWR

Dear Efrain,

You have been absent without authorization since 8/22/17.

You need to report to work by 10/19/17 for 0930-1600 shift. If you do not report to work by 10/19/17 for the 0930-1600 shift, the Company will consider you as having voluntarily quit your position at UPS Freight.

Sincerely,

UPS FREIGHT

Service Center Manager
Jeff Cheyne

Cc: RDO
    SC Manager
    Labor Manager
    IBT Local 745 - Certified #70162710000016499106
    Grievant – Certified #70162710000016499199



UPS Freight

Southeast Region
2600 East Pioneer Drive
Irving, TX 75061

Efrain Areizaga                          ID# 5069679
4241 Rufe Snow Dr APT 1423               October 23, 1017
North Richland Hills, TX 76180

                          IN RE:        Job Abandonment
                                        Clerk- FWR

Dear Efrain,

On October 10, 2017 you were sent a 48 hour letter to report to work, but you have failed to do so.  Due to your job abandonment your employment is terminated.

This is an Official Notice of Termination as outlined under Article 6 of the current labor agreement between UPS Freight and IBT Local 745.

                                        Sincerely,

                                        UPS FREIGHT

                                        Jeff Cheyne
                                        Service Center Manager

Cc: Ronald Godbey
    Jeff Cheyne
    Robert Currie
    IBT Local 745 - Certified #70162710000016499397
    Employee – Certified #70162710000016499427

EIVED

S 2017

UNION EXHIBIT
NUMBER   4

Case 4:22-cv-00703-Y     Document 1     Filed 08/15/22     Page 28 of 31     PageID 28

 Gmail                                    **Efrain Areizaga <efrainareizaga@gmail.com>**

## 2nd amendment to Grievances

**Efrain Areizaga** <efrainareizaga@gmail.com>                       Fri, Oct 27, 2017 at 3:35 PM
To: "R.C" <cuevas745@gmail.com>

Rod, i will be attending. These are the issues to argue for wrongful termination;

1) I was instructed that Aug. 22 was my last day by Manager.
2) I was escorted off the property and my badge was confiscated.
3) I wasn't working for two months.
4) another employee was hired for my position.

Based in the facts above and since there was no notice of termination. This constitutes a de facto termination. A termination without notice which is a wrongful termination and a contractual violation.

Efrain Areizaga

On Oct 27, 2017 2:52 PM, "R.C" <cuevas745@gmail.com> wrote:
[Quoted text hidden]

# ◤◢ Gmail

Efrain Areizaga <efrainareizaga@gmail.com>

## OFCCP Complaint - I00207766 Areizaga, Efrain v. UPS Freight - Update

6 messages

**Melendez Jr, Hector M - OFCCP** <MelendezJr.Hector@dol.gov>         Wed, Feb 6, 2019 at 9:13 AM
To: Efrain Areizaga <efrainareizaga@gmail.com>

Good morning Mr. Areizaga,

I hope you are doing well. It has been a while since last we spoke. Just recently I returned from a temporary duty/tasking that lasted about 4 months so I have been out of the loop. Since returning I have been trying to catch up on all my work.

To keep you up-to-date, I did receive and I have reviewed UPSF's position statement. I have considered the arguments on both sides and have a good understanding of the relevant facts. There are a few "holes" in the facts and in the timeline I need to explore. To that end, I am coordinating with UPSF to schedule the onsite investigation at which I will conduct interviews and gather any other documents or evidence. Once completed, I can finish my report and issue my findings and recommendations.

In summary, UPSF's main argument is they terminated your employment for job abandonment. They did not mention or acknowledge any termination on 8/22/17, as you allege. However, they do claim, as you do, that 8/22/17 was your last day of work. What I find hard to believe is their position that despite knowing there was no available position for you (they had hired someone for the AM shift and the PM shift senior employee/clerk was taking over the position you had held), they somehow expected you to show up for work after 8/22/17. Moreover, I find it hard to believe, for 49 days, they did not contact or notify you at all; they waited 49 days to send you a 48-hour notice to return to work. Had they immediately terminated you for either insubordination (for argument with Clint Shirley) or for not being able to take the AM shift after being displaced, this case would be very different. USPF's actions/delays seem very peculiar to me. In any case, I intend to get to the bottom of this.

That is all for now. I will be in touch. Take care.

Sincerely,

Hector M. Melendez Jr., J.D.

Compliance Officer

U.S. Department of Labor

Office of Federal Contract Compliance Programs

525 S. Griffin Street, Room 512

Dallas, TX 75202

Phone    972.850.2660

Fax       972.850.2651



# BurnsBarton
## Labor and Employment Lawyers

March 24, 2021

<u>**SUBMITTED VIA EEOC RESPONDENT PORTAL**</u>
<u>**AND EMAIL TO:**</u>
Quida Black
EEOC Investigator
Quida.black@eeoc.gov

      **Re:**    *Efrain Areizaga v. United Parcel Service, Inc.*
               **EEOC Case No. 450-2019-04874**

To Whom It May Concern:

This firm represents UPS Ground Freight, Inc. ("UPS") with respect to the above-mentioned Charge by Efrain Areizaga. Although Areizaga alleges he was terminated after filing a complaint of discrimination, UPS terminated Areizaga's employment as a result of his expressed inability to transfer to an open morning shift position after he was displaced from an evening shift position by an employee with higher seniority.

UPS submits this position statement as part of its desire to cooperate and resolve this matter as efficiently as possible. UPS has worked diligently to identify and provide all of the information that may be relevant to Areizaga's Charge. The information set forth in this position statement is based upon the company's understanding and investigation of the facts at this time. By submitting the instant position statement, UPS in no way waives its right to present new or additional facts or arguments based upon subsequently acquired information or evidence. This document does not constitute an affidavit and is not intended to be used as evidence of any kind in any agency or court proceeding in connection with the Charge or any other matter. UPS provides this document with the understanding that its contents and attachments are confidential and will not be disclosed or given to the Charging Party or to the Charging Party's attorney or representative. UPS also reserves the right to object to the admissibility of this letter and its attachments in any subsequent litigation. UPS denies all allegations made by Getz in the Charge, and offers its position below. Any allegation not expressly addressed in this position statement is denied.

## I.    BACKGROUND

### A.    United Parcel Service and UPS Freight

2201 E. Camelback Road, Suite 360, Phoenix, AZ 85016  phone: 602.753.4500

# CIVIL COVER SHEET

JS 44 (Rev. 10/20) - TXND (10/20)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Efrain Areizaga, Pro Se

## DEFENDANTS

TForce Freight, Inc., United Parcel Service, Inc., IBT Local 745

**(b)** County of Residence of First Listed Plaintiff ___Tarrant___
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Tarrant___
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* 469-297-0216

4241 Rufe Snow Dr., #1423, N. Richland Hills, TX 76180

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | **PERSONAL INJURY** [ ] 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | **LABOR** | |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Management Relations | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 864 SSID Title XVI |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 865 RSI (405(g)) |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | **FEDERAL TAX SUITS** |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | [ ] 871 IRS—Third Party 26 USC 7609 |
| | | [ ] 555 Prison Condition | | [ ] 890 Other Statutory Actions |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | [ ] 891 Agricultural Acts |
| | | | | [ ] 893 Environmental Matters |
| | | | | [ ] 895 Freedom of Information Act |
| | | | | [ ] 896 Arbitration |
| | | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | | | | [ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1331, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e

Brief description of cause:
Discriminatory retaliation and other causes of action.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$7,593,457.14

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
August 15, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____